TERMS HELD IN 1858. 77

Hendry and Wife vs. Clardy et al.—Opinion of Court.

ARCHIBALD HENDRY AND MARY ANN, HIS WIFE, APPEL-
LANTS, *vs.* JAMES M. CLARDY, DANIEL BELL AND OTHERS,
APPELLEES.

1. Where a bill is brought against his guardian by a ward, to compel him to account for certain slaves alleged to have been received by him from the estate of the father of the ward, a plea by the guardian that they had been recovered from him in an action of detinue, prosecuted by the administrator on the father's estate, constitutes a good defence.

2. The hires of the slaves accruing prior to the recovery by the administrator follow the title of the property, and are due to the administrator and not to the ward.

3. Where a plea in bar to the original bill has been sustained upon demurrer, a supplemental bill, filed afterwards, and before the final decree, confessing and avoiding the matters set up in the plea as a defence, ought to be answered by the defendant, and it is error to dismiss it upon demurrer.

4. Where a bill for account is brought against a guardian and the sureties on his guardian bond, the final decree, if for the payment of money, should be so framed that it shall be enforced against the sureties only in the event that the money cannot be made out of the principal.

5. Where one of several wards brings his bill for account against his guardian, the other wards who may be interested in the general fund, must be made parties to the suit.

This case was decided at Tallahassee.

For the facts of the case reference is made to the opinion of the Court.

*Walker & Call* for appellants.

*Wm. H. Mitchell* for appellees.

DuPONT, J., delivered the opinion of the Court.

This was a proceeding in equity instituted by the appellants against a guardian and the sureties on his guardian bond. The original bill alleges that James M. Clardy, in

his capacity of guardian, had possessed himself of several large sums of money and of certain slaves, in which the appellants claimed an undivided interest, and asking that the said Clardy and his sureties might be required to account for the same and for the hires of the slaves and the interest of the money.

To this bill the sureties on the guardian bond interposed a general demurrer, which was overruled by the Chancellor and they ordered to answer the bill. The defendant Clardy also filed his answer denying the receipt of the sums of money charged to have been received by him; and, as touching the slaves, he pleaded specially in bar that they had been recovered from him in an action of *detinue* by the administrator on the estate of Thomas T. Clardy, deceased. To this plea the complainants filed their demurrer, which was overruled, and the plea held to be a bar to so much of the bill as was covered by it.

After these proceedings were had, the complainants then obtained leave to amend their bill, which they did, and also filed their *supplemental* bill, in which they alleged, amongst other things, that since the filing of the original bill and the proceedings had thereon, they had discovered that an arrangement had been made between Watts, the administrator, and Clardy, the guardian, touching the judgment insisted upon in the plea as a bar to their recovery, by virtue of which arrangement and compromise the slaves, which had been recovered from the guardian in the action of *detinue*, were permitted to remain in his possession in his capacity as guardian, and that he has ever since held them in that capacity; that the judgment for the slaves recovered by Watts, the administrator, had never been executed otherwise than by carrying out the terms of the said arrangement, and that

Hendry and Wife vs. Clardy et al.—Opinion of Court.

the administration on the estate of Thomas T. Clardy had been closed and the administrator discharged.

To the supplemental bill, James M. Clardy, the guardian, and Daniel Bell, one of the sureties on his bond, filed their joint and several demurrer, which was sustained, and the supplemental bill ordered to be dismissed.

The Chancellor then proceeded to pronounce a final decree in the cause, which is in the following words, to wit:

"This cause having been, by agreement of counsel, set for hearing on the first Monday in December, 1857, came on this day to be heard on bill, answer, plea, exhibit, supplemental bill and demurrer—whereupon it is ordered, adjudged and decreed that the supplemental bill be dismissed. It is further ordered, adjudged and decreed that the complainants have no equity to recover from the defendants the slaves and their hires mentioned in the original bill of complaint in this cause, and that so much of said bill as relates to the slaves and their hires be dismissed. It is further ordered, adjudged and decreed that the complainants have an equity to recover from the said defendants their proper distributive share of any such moneys as the said James M. Clardy may have received as their guardian from the estate of Wm. Gore, deceased, and that it be referred to take evidence of such sums of money as he may have thus received, and of the interest of complainants in the same, and report the same to this Court," &c.

The appeal is from this decree of the Chancellor, but there has been no petition of appeal presented by the counsel for the appellant setting forth the grounds for appeal, in accordance with the rule on the subject, and we might well refuse to consider the case; but, having consented to hear it, we will proceed to examine the questions which, in our opinion, are presented by the record.

In looking into the record, we perceive but two rulings

of the Chancellor which could be assigned by the appellants as grounds of exception : the one being the overruling of their demurrer to defendant's plea in bar, and the other ordering the supplemental bill to be dismissed. We will consider these questions in the order in which they are here presented.

In order to a proper understanding of the views of the Court on the first point, it is necessary to refer to the allegations of the original bill touching the possession of the slaves by Clardy, the guardian. The substance of these allegations is, that James M. Clardy, one of the defendants, Mary Ann, the wife of the complainant Archibald Hendry, and three others, were the minor children of Thomas T. Clardy, deceased ; that letters of guardianship of these minors were granted to the said defendant, who, by virtue of his office of guardian and having an equal undivided interest in the estate of his deceased father Thomas T. Clardy, took possession of the slaves and absolutely refused to account for them or their hires to the said complainants. The defence set up in the plea of defendant is, that the slaves were recovered from him by an action of *detinue* instituted by Watts, the administrator, as the property of his father's estate.

The demurrer confessed the facts set forth in the plea, and we are at a loss to conceive how in this state of the pleadings the Chancellor could have done otherwise than to have sustained the plea by overruling the demurrer. It certainly constituted a good defence for the defendant, that the slaves had been recovered from him by the paramount title of the administrator ; and, with reference to the hires which had accrued, it is also manifest that they must follow the title of the property, and that he was not accountable for them as guardian. We are therefore of the opin-

ion that there was no error in overruling the demurrer to the plea in bar.

The next point for consideration arises out of the order for the dismissal of the supplemental bill. That bill was evidently framed with the view of supplying the defect in the original bill, by a statement of facts, which, if established, might remove the bar presented by the plea to the original bill. The substance of these facts is, that after the recovery of the slaves by the administrator, an arrangement and compromise was entered into between him and the defendant, by virtue of which he was permitted to retain the possession of the slaves as the property of his wards, and to control the same in his capacity as guardian. What was the definite character of that arrangement, or the specific terms of the compromise, is not stated in the bill, nor was it indispensable that they should have been stated, as the allegation was open to the response of the defendant. It may be that the administrator, out of the back hires of the slaves in the hands of the defendant, or out of other assets coming to his hands, had been enabled to satisfy and discharge the debts existing against the estate of Thomas T. Clardy, deceased, without resorting to a sale of the slaves for that purpose, and having discharged the debts, he could only have settled his administration and procured his discharge by delivering over to the newly appointed guardian, the balance of the estate remaining in his hands for distribution. At any rate, the defendants' demurrer confessed the allegation, that he had received the slaves from the administrator and that he held them in his capacity of guardian, and as the property of his wards. In this state of the pleadings, the proper course would have been to have required an answer from the defendant, and not to have dismissed the bill. It is quite ev-

ident, that if by the answer of the defendant or by proofs *aliunde*, this allegation should be established to be true, it would constitute a good replication to, and avoidance of the bar attempted to be set up in the plea.

For the guidance of the Chancellor, it may not be inappropriate to remark, that if in the further progress of this cause, a final decree for the payment of money should be made against the defendants, it will be proper so to frame the decree, that it shall be enforced against the sureties only in the event that the money cannot be made out of the principal. This we deem to be equitable, and in full accordance with the spirit of the statute which provides for the collection of money out of sureties. Indeed in a proceeding like this, it would be highly inequitable to permit the sureties to be harrassed, by an execution, before it had been fully established that the principal was unable to respond to the amount of the decree.

In the case of Wiser vs. Blachly, (1 John. Ch. R. 607,) which was a suit for account brought by an infant against his guardian and the representative of the surety, the Chancellor said : " Perhaps it will be premature to take an account of the assets in the hands of the Executor of the surety, until the default of the principal and his inability to pay are first ascertained."

In that case the bill as against the Executor of the surety was not dismissed, but it was retained to abide the result of the investigation as to the ability of the principal to respond to the amount which might be found to be due by him to his ward. In cases of this kind, the surety ought always to be made a party to the taking of the account, but the execution should go out against him only in the event of the inability of the principal to pay.

In the further proceedings to be had in this cause, the complainants must be required to amend their bill, so as

to make all other persons, who are interested in the general fund, if any such there should be, parties, in order that there may be a final termination of the litigation.

Upon a full consideration of this case, it is ordered, adjudged and decreed, that the decree of the Circuit Court herein be *reversed* and set aside, and the cause be remanded for such further proceedings to be had therein, as may be in conformity with the views expressed in this opinion. It is further ordered that the appellees do pay the costs of this appeal.