WILLIAM S. GRAMLING AND W. SANDERS GRAMLING, A MINOR, *Appellants*, v. F. W. CHAPMAN AND F. W. CHAPMAN, JR., CO-PARTNERS DOING BUSINESS AS F. W. CHAPMAN PLUMBING COMPANY, *Appellees*.

### Opinion Filed March 19, 1921.

1. One who furnishes material to a contractor for the construction of a house has a lien upon the premises after due notice to the owner, to the extent only of the amount due by the owner to the contractor at the time of the notice and that may become due to him or his assigns thereafter upon the contract.

2. Averments in an answer to a bill to enforce a material man's lien are not impertinent nor insufficient when construed together they present a complete defense to the suit.

3. The mere fact that the owner of a lot upon which a building is being constructed holds the bond of a surety company to indemnify the owner against any loss resulting to him from the default of the contractor does not affect a change in the relation between the owner and sub-contractor.

An Appeal from the Circuit Court for Dade County; H. Pierre Branning, Judge.

Order reversed.

*Gramling* & CLARKSON, for Appellants;

*Shutts, Smith* & *Bowen,* for Appellees.

ELLIS, J.—This is an appeal from an interlocutory order sustaining certain exceptions to portions of the answer of one of the defendants in the court below to the bill of complaint.

F. W. Chapman Plumbing Company exhibited their bill against William S. Gramling and W. Sanders Gramling, a minor, to foreclose a material man's lien upon the house of the defendants, which the complainants averred had been obtained in the following manner: The Gramlings had let a contract to the Biscayne Construction Company, a corporation, for the erection of the house; that the contractor purchased from the complainants which dealt in plumbers' supplies and performed labor as plumbers, a large supply of material and procured the complainants to do a great deal of work. That both material and labor was supplied and performed upon the building until December 12th, 1916, when the contract between the complainants and the contractor for the supply of plumbing material and labor was executed by the complainants. That there was then due to them a large balance on account. That they notified defendants in writing of their claim, and at that time the defendants had had no final settlement with the contractor and there was then an amount largely in excess of complainants' claim still unpaid on the building contract.

The bill also contained the following allegation: Paragraph 11. "That your orators are informed and believe that before the Biscayne Construction Company com-

menced the erection of said building that the defendant William S. Gramling required of said company a bond with good and sufficient surety thereon to protect him in case said company should fail to fully perform their part of said contract, and your orators are informed that said bond was also given to protect sub-contractors and material men; that during the month of December, 1916, the said Biscayne Construction Company discontinued the performance of their contract, whereupon the said Wm. S. Gramling demanded a settlement of the surety upon said contractor's bond and your orators are informed and believe that said Wm. S. Gramling was paid approximately the sum of $4,500 by said surety in order that he might complete the said building and pay off all sub-contractors and material men."

The answer admitted making the agreement with the construction company for the erection of the building, but averred that when notice was given by complainants of their claim against the contractor it had abandoned its contract with defendants, leaving the contract unfinished; that while there was unpaid on the contract only $480.07, no sum of money was due the contractor. That there was equitably due the defendants from the contractor a greater sum than that, and that the sum unpaid on the contract was necessarily used to complete and carry out the contract of the Biscayne Construction Company. That defendants paid for all labor and material furnished by the complainants after the construction company abandoned its contract. The answer did not deny the existence of the bond and averred that acting in accordance with its provisions the defendants paid over to the sureties the amount unpaid on the contract when the contractor abandoned the work.

The answer having averred that the contractor had abandoned his contract when the complainants served notice of their claim on defendants and that the contract was then uncompleted; the stricken portions of the answer taken together simply mean that such abandonment of the contract resulted in financial loss to the defendants. That at that time the contractor owed defendants a sum greater on account of the contract than the amount that would be due under the contract if the contractor had completed it. That the amount of $480.07 which represented the balance that would have been due the contractor if he had finished the building as agreed, was used by the defendants in completing the contract. That all material furnished by complainants after the abandonment of the contract by the contractor had been fully paid for and that nothing was due the complainants by the defendants nor had they been requested by the complainants before the abandonment of the contract to pay the sums alleged to be due.

In other words, as the complainants' lien depends upon the fact that the defendants owed the contractor at the time notice was served on them of complainants' claim, the defendants replied that they owed the contractor nothing at that time, and had paid complainants all bills for material which had been furnished after the contractor abandoned the contract. This latter averment was material as the claim showed items upon it amounting to $158.61 charged after the abandonment of the contract by the contractor, which amount was more than 30% of the entire claim.

If the defendants, in good faith, paid the contractor more money upon the contract from time to time than he had earned, or that the terms of the agreement re-

quired to be paid, so that when he abandoned the contract there was less money to be paid on the contract when finished, according to its terms, than was necessary to complete the building according to the terms of the contract, it cannot be maintained that a sub-contractor, by serving notice of his claim on the owners of the premises for materials after abandonment of the contract, thereby acquires a lien upon the premises to the extent of the amount that would have been due to the contractor if he had completed the building according to his contract. The fact that the owner of the premises had the bond of a surety company indemnifying him against loss by reason of the contractor's failure to fulfil his contract does not effect a change in the relation between the sub-contractor and the owner.

The words "amount unpaid on the contract" which appear in Sec. 2211 of the General Statutes, 1906, Compiled Laws, 1914, providing for a lien in favor of material men and laborers have been construed to mean "the amount due to the contractor." See Lowry v. Downing Mfg. Co., 73 Fla. 535, 74 South. Rep. 525; Dekle v. Valrico Sandstone Co., 74 Fla. 346, text 358, 77 South. Rep. 95.

In the case of King v. Ramsey, 66 Fla. 257, 63 South. Rep. 439, this court held that under the above statute the lien of the material men extended to the amount unpaid on the contract when the same was completed by the contractor's sureties, whether the amount so unpaid was actually due when the notice was served or not. That case was intended to follow the case of Carter v. Brady and Cox, 51 Fla. 404, 41 South. Rep. 539; in which case Brady owned the land, Cox was the contractor, and Carter the material man. Cox abandoned his contract

and assigned his interest in it to Spencer; Brady agreeing to pay Spencer the amount unpaid on the contract if he should complete the building as per contract with Cox. The court held in that case that Spencer merely undertook to complete the contract begun by Cox and occupied the same relation toward Brady as Cox occupied, and that therefore Carter's lien existed because when notice was served there was an amount unpaid on the contract greater than the amount of Carter's claim.

The bill in the case at bar, however, alleges that the bond taken by Gramling was for the protection of the material men, and that the sureties had paid to Gramling the money "to pay off" the material men. In that case the material men have an action at law aaginst Gramling for money paid to the defendants for the use of the plaintiffs. It is not sufficient, however, to create a lien in favor of the material men upon the property of the owner.

The order sustaining the exceptions to the answer was erroneous, and is hereby reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WFST, J. J., concur.